**SO ORDERED.**

**SIGNED this 12 day of May, 2011.**

*James P. Smith*
_____
**JAMES P. SMITH**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| JAMES R. SALVADOR, JR. | : | |
| DEBRA A. SALVADOR, | : | |
| | : | |
| Debtors | : | Case No. 10-53570 JPS |
| | : | |
| JAMES R. SALVADOR, JR. | : | |
| DEBRA A. SALVADOR, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| vs. | : | |
| | : | |
| BANK OF AMERICA, NATIONAL | : | |
| ASSOCIATION, BY WELLS FARGO | : | |
| BANK, N.A., ITS SERVING AGENT; | : | |
| WELLS FARGO HOME MORTGAGE, A | : | |
| DIVISION OF WELLS FARGO | : | |
| BANK, N.A., | : | |
| | : | |
| Defendants | : | Adversary Proceeding |
| | : | No. 10-5132 |

BEFORE

JAMES P. SMITH.
UNITED STATES BANKRUPTCY JUDGE


APPEARANCE:


Plaintiffs:                    Wallace R. Nichols
                               W.R. Nichols & Associates, P.C.
                               5588 Chamblee Dunwoody Rd. #162
                               Atlanta, GA 30338


Defendants:                    Elizabeth A. George
                               Aldridge Connors, LLP
                               780 Johnson Ferry Road
                               Suite 600
                               Atlanta, GA 30342

                               Danny Wilder
                               544 Mulberry Street
                               Suite 800
                               Macon, GA 31201

Chapter 13 Trustee:            Camille Hope
                               P.O. Box 954
                               Macon, GA. 31202

<u>**MEMORANDUM OPINION**</u>

Before the Court is Defendants' (collectively "Wells Fargo") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. The motion came on for hearing on March 30, 2011. After considering the pleadings, the briefs and the arguments of the parties, the Court issues these findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. As explained below, the motion is granted in part and denied in part.

<u>**FACTS**</u>

In their complaint, Debtors James P. Salvador, Jr. and Debra A. Salvador allege that in March 2006, they refinanced their then-existing fixed-rate home loan with Countrywide Home Loans by obtaining an adjustable-rate home loan from Wells Fargo (the "Loan"). Debtors allege that Wells Fargo made the Loan as a set up for a "flipping transaction" to refinance it within a short time period. Debtors allege that they suffered a cash flow problem in November 2009, as a result of the bad economy and the ever increasing monthly payments to service the Loan. In December 2009, Debtors alleged they negotiated an agreement with Wells Fargo to modify the Loan payments in an attempt to avoid default. Debtors and Wells Fargo entered into an agreement under the federally funded Home Affordable Modification Program (HAMP), whereby Debtors' mortgage payments for a "trial period" were reduced from some $2,100 to $1,147 per month as a part of a Trial Period Plan ("TPP"). Debtors made the TPP payments from December 2009, until September 2010, during which Debtors,

3

on multiple occasions, provided financial statements to Wells Fargo to verify Debtors'

qualifications under the modification program.  On or about September 30, 2010, Wells

Fargo placed Debtors on notice of default and that Wells Fargo would not accept any more

payments.  Wells Fargo demanded full payment of the arrears in order to reinstate the Loan.

In October 2010, Wells Fargo initiated foreclosure proceedings with a scheduled foreclosure

date of November 2, 2010.

Debtors filed their Chapter 13 case on October 26, 2010.  Thereafter, Debtors filed

their complaint in this adversary proceeding. Debtors seek equitable relief and damages from

Wells Fargo on claims relating to the closing and subsequent servicing of their March 2006,

Loan and their subsequent unsuccessful attempt to modify the Loan under HAMP.  The

complaint asserts claims under the Georgia Fair Lending Act ("GAFLA") (O.C.G.A. §§ 7-

6A-1 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. §§ 2601 et

seq.), the Georgia Uniform Deceptive Trade Practices Acts ("UDTPA") (O.C.G.A. §§ 10-1-

370 et seq.), the Georgia Fair Business Practices Act of 1975 ("FBPA") (O.C.G.A. §§ 10-1-

390 et seq.), a third-party beneficiary claim under HAMP, and common law claims for breach

of contract, breach of convent of good faith and fair dealing, and promissory estoppel.  Wells

Fargo timely filed an answer denying liability and asserting numerous affirming defenses.

## DISCUSSION

1.   <u>Standard for motion to dismiss</u>

Federal Rule of Civil Procedure 12(c) provides:

**Motion for Judgment on the Pleadings**.  After the

4

pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings.

The Eleventh Circuit has explained that:

Judgement on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the moving party.

Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir.), cert. denied 528 U.S. 820, 120 S.Ct. 63, 145 L.Ed.2d 55 (1999).  (internal citations omitted).

2.      Consideration of matters outside of the pleadings.

Federal Rule of Civil Procedure 12(d) provides:

**Result of Presenting Matters Outside the Pleadings**.  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

However, in Financial Security Assurance, Inc., v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007), the Eleventh Circuit held:

Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss.  Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368(11th Cir. 1997).  This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to his motion to dismiss.  Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999); Brooks, 116 F.3d at 1368-69.

The Loan between Debtors and Wells Fargo is central to Debtors' complaint and is referenced numerous times therein. Further, Counts II and III of Debtors' complaint allege causes of action for breach of the Trial Period Plan Agreement ("TPP Agreement"). While none of the documents evidencing the Loan or the TPP Agreement were attached to Debtors' complaint, Wells Fargo attached to its motion to dismiss and brief copies of the note, security deed and assignment evidencing the Loan and the TPP Agreement signed by Debtors on December 7, 2009. At the hearing on Wells Fargo's motion on March 30, 2011, counsel for Debtors acknowledged that these were the documents referenced in the complaint and did not contest their contents or authenticity. Accordingly, in considering Wells Fargo's motion, the Court will consider these documents.

3.    Count I - Georgia Fair Lending Act (GAFLA).

In Count I, Debtors seek damages and other relief from Wells Fargo for its alleged violation of the Georgia Fair Lending Act ("GAFLA") (O.C.G.A §§ 7-6A-1 et seq.)[1] The Loan from Wells Fargo arose in March 2006, when Debtors refinanced their then-existing home loan with Courtywide Home Loans. Debtors contend that in making the Loan, Wells Fargo violated three provisions of GAFLA, namely (1) section 7-6A-5(7) by making a high-cost home loan[2] without first receiving certification from an "approved counselor" that

---

[1] At the hearing on Wells Fargo's motion to dismiss on March 30, 2011, Debtors' counsel stated that no relief was sought in Count I under the Truth-in-Lending Act (TILA) (15 U.S.C. §§ 1601 et seq.) even though TILA is mentioned in Count I.

[2] A high-cost home loan means a loan in which the annual percentage rate or total points and fees exceed certain amounts. O.C.G.A. §§ 7-6A-2(7), (17).

Debtors had received counseling on the advisability of the loan transaction, (2) section 7-6A-5(15) because the first page of the loan documents did not contain a notice that the mortgage was subject to GAFLA and that purchasers or assignees of the mortgage may be liable for all claims and defenses, and (3) section 7-6A-4 which prohibits "flipping" of certain home loans.[3] (Complaint paras. 77-79). Debtors seek damages and other relief under section 7-6A-7 for the alleged violations. Debtors also assert their claims "as a matter of defense by recoupment" under section 7-6A-6(c) to stay the pending foreclosure on their home. GAFLA provides that the borrower (the Debtors) may bring an action for these alleged violations. O.C.G.A. §§ 7-6A-6(c), 7-6A-7.

Wells Fargo, a national charted bank, contends that federal law preempts GAFLA. Wells Fargo relies upon a Preemption Determination and Order published in the Federal Register, which was issued on August 5, 2003, by the Office of the Comptroller of the Currency ("OCC"), an agency within the United States Department of the Treasury.[4] Preemption Determination and Order, 68 Fed. Reg. 46264-02 (Aug. 5, 2003).

Title 12 of the United States Code provides that, after proper notice and an opportunity for comments, the OCC may issue and publish in the Federal Register an opinion letter or interpretive rule that concludes that federal law preempts the application to a national bank any state statute regarding, in part, consumer protection or fair lending. 12 U.S.C. §§ 43(a),(b), 1813(q)(1).

---

[3] Flipping is the consummation of a high-cost home loan that refinances an existing home loan that was consummated within the prior five years if the new loan does not provide reasonable, tangible net benefits to the borrower. O.C.G.A. § 7-6A-4(a).

[4] Sinclair v. United States, 56 Fed. Cl. 270, 271 (2003).

In <u>Wachovia Bank v. Burke</u>, 414 F.3d. 305 (2nd Cir. 2005) <u>cert</u>. <u>denied</u> 550 U.S. 913, 127 S. Ct. 2093, 167 L.Ed 2d 830 (2007), a national charted bank and its operating subsidiary contended that the enforcement of certain state banking laws against the bank's subsidiary were preempted by the National Bank Act and regulations issued by the OCC.  The Second Circuit agreed and, citing Supreme Court precedent, stated:

> The OCC is the federal agency entrusted with the "primary responsibility for surveillance of the 'the business of banking' authorized by [12 U.S.C.] § 24 Seventh."  It has the power to promulgate rules and regulations and may use its rulemaking authority to define the "incidental powers" of national banks beyond those specifically enumerated in the statute.

<u>Id</u>. at 312.  (citations omitted)

> "Federal regulations have no less preemptive effect than federal statutes."  Federal courts have recognized that the OCC may issue regulations with preemptive effect.  Congress has expressly recognized the OCC's power to preempt particular state laws by issuing opinion letters and interpretive rulings, subject to certain notice-and-comment procedures. <u>See</u> 12 U.S.C. § 43.

<u>Id</u>. at 314. (citations omitted)

In its order issued on August 5, 2003, the OCC concluded that the provisions of GAFLA[5] affecting national banks' real estate lending were preempted by federal law and that GAFLA did not apply to any national bank or operating subsidiary.  67 Fed. Reg. at 46264. The OCC specifically considered and determined that federal law preempted GAFLA's requirement that certain borrowers receive a certification from a counselor concerning the advisability of the loan transaction (O.C.G.A. § 7-6A-5(7)), and GAFLA's restrictions on refinancing certain loans known as "flipping" (O.C.G.A. § 7-6A-4).  <u>Id.</u> at 46277.  The OCC

---

[5] The OCC refers to GAFLA as GFLA.

8

also determined that GAFLA's requirement that the first page of the loan documents contain

a disclosure that the mortgage was subject to GAFLA and that purchasers and assigns may be

liable for all claims and defenses (O.C.G.A. § 7-6A-5(15)) was moot because the substantive

provisions of GAFLA were preempted and, thus, there was no state law to evade.  Id. at

46280.

The OCC published a Final Rule on January 13, 2004, amending 12 CFR Parts 7 and

34 to specify the types of state laws that do and do not apply to national banks' lending and

deposit taking actions.  69 Fed. Reg. 1904-01 (Jan. 13, 2004).  The Final Rule cites the

OCC's GAFLA August 5, 2003 order three times, but did not change or overrule that order.

69 Fed. Reg. at 1908, 1911 n. 57, 1912 n. 59.

In their response to Wells Fargo's motion, Debtors contend that at least some of the

relief sought in Count I, including equitable relief barring foreclosure, was not preempted.

(Complaint para. 80).

The OCC's order clearly stated that the types of violations of GAFLA asserted by

Debtors in Count I were either preempted by federal law or were moot as a result of the

preemption.  In an Interpretive Letter dated April 2, 2004, in response to a request from the

Commissioner of the Georgia Department of Banking and Finance as to which sections of

GAFLA were or were not preempted, the OCC stated that its order issued on August 5, 2003,

did not preempt sections 7-6A-5(13)(B) (requiring lender to terminate foreclosure proceeding

if default is cured) and 7-6A-7(f) (mortgage broker liability).  However, the OCC stated that

the sections upon which Debtors rely for damages and recision, sections 7-6A-6(c) and 7-6A-

7(a)-(e) and (g)-(I), did not apply to national banks because these sections were moot since

9

the underlying obligations they would have enforced were preempted.  OCC Inter. Ltr. 1000,

2004 WL 3465747 (O.C.C.) (April 2, 2004).[6]

Thus, all of Debtors' claims under GAFLA asserted in Count I are preempted by

federal law.  Accordingly, Wells Fargo's motion for judgment on the pleadings as to Count I

is granted.

4.     Count II - Breach of Contract / Breach of Covenant of Good Faith and Fair Dealing.

In Count II, Debtors  allege that on March 10, 2006, they entered into the Loan with

Wells Fargo, as evidenced by an Adjustable Rate Note, pursuant to which Debtors agreed to

pay Wells Fargo $340,000 plus interest through monthly installments to begin May 1, 2006.

(Complaint para.  28,  Exhibit "A" to Wells Fargo brief) .  On December 7, 2009, Debtors

signed the TPP Agreement pursuant to which they sought modification of the Loan.

(Complaint paras. 64, 65, Exhibit "D" to Wells Fargo brief).

Debtors contend that they made all the payments required under the TPP Agreement

and that they made additional payments as well.  (Complaint para. 67).  They further contend

that they fully complied with Wells Fargo's demands in order to complete the modification

process. (Complaint para. 69).  Nevertheless, Wells Fargo gave notice of default, demanded a

full cure of all defaults under the Loan and began foreclosure proceedings for a foreclosure to

---

[6] Debtors' reliance on Cuomo v. Clearing House Ass'n., L.L.C., __ U.S.__ , 129 S. Ct. 2710, 174 L.Ed. 2d 464 (2009) is misplaced.  The issue before the Supreme Court in Cuomo was whether the "visitorial powers" of the state were preempted under a particular OCC regulation.  That regulation is not at issue in this case and Cuomo did not deal with the question of whether the National Bank Act preempted state consumer protection laws such as GAFLA.

take place on November 2, 2010.  (Complaint paras. 70, 71).

Debtors allege that the TTP Agreement "constitutes a valid contract".  (Complaint para. 82).  Debtors contend that Wells Fargo breached this contract by, inter alia, failing to offer permanent modification of the Loan and by proceeding with foreclosure. (Complaint paras. 90-91).

To bring a breach of contract claim, the plaintiff has the burden of first proving a valid and enforceable contract.  Thus:

> Under OCGA § 13-3-1, the plaintiff in a breach of contract action has the burden of pleading and proving three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms.

Broughton v. Johnson, 247 Ga. App. 819, 545 S.E. 2d 370, 371 (2001).

O.C.G.A. § 13-3-2 provides:

> The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition.

As explained by the court in Transouth Financial Corp. v. Rooks, 269 Ga. App. 321, 324, 604 S.E. 2d 562, 564-65 (2004):

> One seeking to enforce a contract must bear the burden of proof as to all the essential elements of the contract, including the assent to the contractual terms.  Associated Mutuals v. Pope Lumber Co., 200 Ga. 487, 491 (2), 37 S.E. 2d 393 (1946).  'No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced.' (Citations and punctuation omitted.)  Reichard v. Reichard, 262 Ga. 561, 564 (2), 423 S.E. 2d 241 (1992).

Thus, where there has been no agreement as to all the essential terms, and the contract is unenforceable for lack of certainty, the breach of contract claim fails.  Moore v. Bellsouth

11

Mobility, Inc., 243 Ga. App. 674, 676, 534 S.E. 2d 133, 135-36 (2000).

The TPP Agreement provides, in pertinent part:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement [the Loan].

Section 2 of the TPP Agreement (Exhibit "D" to Wells Fargo brief) required Debtors to pay

Wells Fargo $1,147 on January 1, February 1, and March 1, 2010. These "Trial Period

Payments" were "an estimate of the payment that will be required under the modified loan

terms, which will be finalized in accordance with Section 3. . . ." The TPP Agreement

further provided:

> During the period 1/1/2010 - 3/1/2010 commencing on 1/1/2010 and ending on the earlier of : (I) the first day of the month following the month in which the last Trial Period Payment is due 4/1/2010 or (ii) termination of this Plan, I understand and acknowledge:
>
> . . .
>
> E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan . . . unless such payments are sufficient to completely cure my entire default under the Loan . . .;
>
> F. If prior to the Modification Effective Date, (I) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan... will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan. . . and shall not be refunded to me;

12

and

> G.  I understand the Plan is not a modification of the Loan... and that the Loan. . .  will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan... if I fail to meet any one of the requirements under this Plan. . . .

> 3.  The Modification.  I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2. D. above, the Lender will determine the new payment amount.  If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan. . . as necessary to reflect this new payment amount and waive any unpaid late charges as accrued to date. . . .  Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan. . . , as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

It is clear from the terms of the TPP Agreement that the document is nothing more than an agreement to negotiate further with respect to the terms of a proposed loan modification.  The parties did not reach an agreement on all essential terms concerning the proposed loan modification.  The TPP Agreement, by its terms, recognizes that the new payment amount under the loan modification had not been determined.  Nor is there any agreement with respect to the interest rate to be charged under the modified loan or whether the maturity date of the Loan would be changed.  Thus, it is clear that the parties did not agree to all of the essential term of a contract by entering into the TPP Agreement.  See Reuben v. First National Bank of Atlanta, 146 Ga. App. 864, 866, 247 S.E.2d 504, 507 (1978) (promise to make a loan with no agreement as to interest rate or maturity date is not

enforceable).

This case is similar to the case of <u>Hartrampf v. Citizens & Southern Realty Investors</u>,
157 Ga. App. 879, 278 S.E.2d 750 (1981).  In that case, Citizens & Southern foreclosed on
real property securing a note from Hartrampf upon default of the note and thereafter filed suit
for the deficiency balance remaining after the sale of the property.  Hartrampf answered and
counterclaimed.  In his counterclaim, he asserted that Citizens & Southern refused to honor
its agreement to extend a second loan commitment.  The court found that the purported
commitment was nothing more than an agreement to agree in the future.  The court found that
the agreement contemplated future negotiations between the parties at an unspecified future
date for a loan of an unspecified amount and unspecified maturity .  The court held:

> Such an agreement lacks the necessary specificity, <u>Dolanson Co. v. C.
> & Nat. Bank</u>, 242 Ga. 681, 682(1a) , 251 S.E.2d 274 (1978), and
> mutuality to be enforceable.  <u>Swindell & Co. v. First Nat. Bank</u>., 121
> Ga. 714, 49 S.E. 673 (1904).  " 'An agreement to reach an agreement
> is a contradiction in terms and imposes no obligation on the parties
> thereto.' [Cit.]" <u>Wells v. H. W. Lay & Co.</u>, 78 Ga. App. 364, 367, 50
> S.E. 2d 755 (1948). . . .

> "This instrument amounts to nothing more than negotiations looking to
> a final and binding contract.  To be final an agreement must comprise
> all the terms which the parties intend to introduce in it. [Cits.] Where it
> is evident from a written instrument, that the parties contemplated that
> it was incomplete, and that a binding agreement would be made
> subsequently, there is no agreement. [Cits.]" <u>Board of Drainage
> Commissioners v. Karr & Moore</u>, 157 Ga. App.  284, 299, 121 S.E.
> 298 (1923).  " 'To be enforceable the minds of the contracting parties
> must be in such agreement on the subject matter upon which the
> contract purports to operate that either party may support an action
> thereon.' [Cit.]" <u>Russell v. City of Atlanta</u>, 103 Ga. App. 365, 367, 119
> S.E. 2d 143 (1961).

157 Ga. App. at 881, 278 S.E. 2d at 752.

14

This conclusion is consistent with the decisions of other courts around the country which have considered breach of contract claims relating to the failure of a lender to provide permanent loan modification pursuant to a TPP agreement. As recently recognized by the United States District Court in Oregon in the case of <u>Lonberg v. Freddie MAC</u> , 2011 WL 838943 at 7 (D. Or., March 4, 2011):

> [E]very court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a permanent loan modification solely on the basis of the existence of a TPP does not sufficiently state a breach of contract claim. <u>See</u>, <u>e.g.</u> <u>Grill v. BAC Home Loans Servicing</u>, 2011 WL 127891 at *3-4 (E.D. Cal., Jan.14, 2011); <u>Prasad v. BAC Home Loans Servicing</u>, 2010 WL 5090331 at *3-4 (E.D. Cal., Dec. 7, 2010); <u>Jackson v. Ocwen Loan Servicing</u>, 2010 WL 3294397 at *3 (E.D. Cal., Aug. 20, 2010); <u>Brown v. Bank of New York Mellon</u> 2011 WL 206124 at *3 (W.D. Mich., Jan. 21, 2011). <u>But see</u> <u>Durmic v. J. P. Morgan Chase Bank</u>, 2010 WL 4825632 (D. Mass., Nov. 24, 2010) (denying motion to dismiss plaintiffs' breach of contract claim when satisfaction of plaintiffs' TPPs was not disputed.)

The courts in <u>Lonberg,</u> <u>Grill,</u> <u>Prasad,</u> <u>Jackson</u> and <u>Brown</u> all held that the language of the TPP agreements made clear that no binding contract existed until an actual modification agreement was signed. The language in the TPP Agreement at issue in this case is identical and the Court agrees with the reasoning of those cases.

Contrary to paragraph 82 of their complaint in which Debtors contend that the "TPP Agreement with Wells Fargo circa December 2009 constitutes a valid contract", Debtors contend in their brief that the TPP Agreement does not represent the entire contract between the parties. They contend that the Court must also consider the letter from Wells Fargo pursuant to which the TPP Agreement document was offered to Debtors. A purported copy of this letter was attached to their brief filed in response to Wells Fargo's motion to stay discovery pending a decision on the motion for judgment on the pleadings. It is unclear

15

whether the exception to Rule 12(d) recognized by the court in <u>Financial Security Assurance</u>, <u>supra</u>, would apply to the letter which Debtors seek this Court to consider.  Wells Fargo has not acknowledged the authenticity of this letter.  Further, the letter was not submitted with any brief or motion filed in the judgment on the pleadings proceedings, although the letter was submitted in a brief filed in discovery proceedings related to the motion.  Nevertheless, it is not necessary for the Court to decide this issue.  A review of that letter makes it clear that it contains none of the essential contractual terms which this Court has found missing in the TPP Agreement.  Thus, even if the Court were to consider the letter as part the contract between the parties, the contract claim would still fail.[7]

Debtors also contend in Count II that Wells Fargo breached the implied duty of good faith and fair dealing with respect to the TPP Agreement.  (Compliant paras. 92-98.) However, the covenant of good faith and fair dealing is not an independent contract, nor does it provide an independent cause of action.  Rather, the covenant modifies and becomes part of the underlying contract.  Thus, if there is no breach of the underlying contract, there is no cause of action for breach of the covenant of good faith and fair dealing.  <u>Stuart Enterprises International, Inc. v. Peykan, Inc.</u>, 252 Ga. App. 231, 555 S.E.2d 881, 884 (2001).  Since this Court had concluded that there is no breach of contract claim because there is no enforceable contract, there is likewise no cause of action stated for breach of the covenant of good faith and fair dealing.

---

[7] The parties also argue in their briefs the issue of whether the contract between the parties was supported by consideration.  Since the Court has determined that the TPP Agreement lacks essential terms to be an enforceable contract, the Court need not decide the issue of whether the alleged contract is supported by consideration.

In summary, with respect to Count II, even assuming all of the facts asserted by Debtors in their complaint are true, the alleged contract between the parties (the TPP Agreement) is unenforceable.  Accordingly, Wells Fargo is entitled to judgment on the pleadings on Count II.

5.      Count III - Promissory Estoppel.

In Count III, Debtors assert a promissory estoppel claim alleging that they are entitled to damages because they relied on Wells Fargo's promise to provide a permanent loan modification, that they acted to their detriment and that such reliance was reasonable. (Complaint paras. 99-105).

As recognized by the court in Georgia Inv. Int'l, Inc. v. Branch Banking and Trust Co., 305 Ga. App. 673, 675, 700 S.E. 2d 662, 664 (2010):

> Georgia has . . . adopted the doctrine of promissory estoppel. 'A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'  OCGA § 13-3-44.  Promissory estoppel does not, however, apply to vague or indefinite promises, or promises of uncertain duration.

In Georgia Investments, the maker of the note and the guarantor sought to defend against enforcement of the note on the grounds that the bank had promised to renew the loan and to provide a new line of credit.  However, the court found that "the promise was vague and indefinite as to other material terms, particularly the interest rate."  305 Ga. App. at 676, 700 S.E. 2d. at 664.  Accordingly, the court held that the promise was too vague to support a promissory estoppel claim.  Likewise, in the case of Reuben v. First National Bank of Atlanta, supra, the court held that promissory estoppel was not available where a promise to

17

make a loan did not include an agreement with respect to the interest rate or maturity date.

146 Ga. App. at 866, 247 S.E. 2d. at 507.  Accord Locke v. Wells Fargo Home Mortgage,

2010 WL 4941456 at * 4 (S.D. Fl., Nov. 30, 2010); Barinaga v. J P Morgan Chase & Co.,

2010 WL 4338326 at * 14-15 (D. Or., Oct. 26, 2010).

As explained in Part 4 above, the alleged contract between the parties fails because it

is too vague and lacks essential terms.  Likewise, the alleged promise to provide a loan

modification was too vague to support a promissory estoppel claim.  Accordingly, Wells

Fargo is entitled to judgment on the pleadings on Count III.


6.      Count IV - Third Party Beneficiary Rights Under HAMP.

In Count IV, Debtors allege that Wells Fargo, as a participant in HAMP, executed a

Service Participation Agreement ("SPA") with the federal government.  (Complaint paras.

46-48).  Debtors contend that under the SPA, Wells Fargo is required to evaluate loans to

determine if a loan modification is appropriate. (Complaint paras. 50-55).  Debtors contend

that they are third party beneficiaries of the SPA between Wells Fargo and the federal

government and that Wells Fargo breached the SPA by wrongfully denying Debtors a

permanent loan modification.  (Complaint paras. 110-111).

As explained by the court in Hubbard v. Dep't. of Transportation, 256 Ga. App 342,

352, 568 S.E. 2d 559, 568 (2002), cert. denied:

> Under OCGA § 9-2-20(b), a third-party beneficiary may sue to enforce a
> contract; however, the third-party beneficiary must be the intended beneficiary
> of the contract.  The mere fact that a third party would benefit incidentally
> from the performance of the contract is not alone sufficient to give such
> person standing to sue on the contract.

18

As far as this Court has been able to determine, no court in the country has accepted a third-party beneficiary claim relating to HAMP.  The courts have unanimously held that borrowers are not intended beneficiaries, but merely incidental beneficiaries to the contract between loan servicers and the government under the HAMP program.  The courts have pointed out that the HAMP program does not require lenders to modify loans, but merely to consider modification.  Accordingly, since the government cannot force a lender to modify a loan under the HAMP program, a borrower has no right to enforce such a modification.  See Sena v. Bank of America Home Loans, 2011 WL 1204333 at *2-3 (D. Nev., March 29, 2011); Villa v. Wells Fargo Bank, N.A. , 2010 WL 935680 at *2-3 (S. D. Cal. March 2010); Escobedo v. Countrywide, 2009 WL 4981618 at * 3 (S.D. Cal. Dec. 15, 2009).  See also Zoher v. Chase Home Financing, 2010 WL 4064798 at *4 (S.D. Fl., Oct. 15, 2010); Marks v. Bank of America, N.A., 2010 WL 2572988 at *3-5 (D. Az., June 22, 2010).   Because Debtors are merely incidental beneficiaries of, and do not have enforceable rights under the HAMP program and SPA, Debtors lack standing to sue as third party beneficiaries. Accordingly, Wells Fargo's motion for judgment on the pleading with respect to Count IV is granted.

7.    Count V -  The Real Estate Settlement Procedures Act ("RESPA").

In Count V, Debtors contend that Wells Fargo failed to provide various disclosures when the Loan was closed as required by RESPA, 12 U.S.C. §§ 2603, 2605, 2607 and 2608 and the regulations promulgated thereunder.  Each of these sections will be discussed separately.

While 12 U.S.C. § 2614 provides for jurisdiction in the district courts and statutes of

limitation for actions under sections § 2605, 2607 and 2608, the statute is silent as to actions

under section 2603.  Thus, many courts have held that there is no private right of action for

violations of section 2603.  See, e.g. Fogle v. Wilmington Finance, 2011 WL 320572 at *7

(D.N. H., Jan. 31, 2011).  Although the Eleventh Circuit has not addressed this issue, the

court has held that there is no private cause of action under section 2604.  The court noted

that while other provisions of RESPA explicitly provide for private civil remedies, section

2604 does not, indicating that Congress did not intend to create a private cause of action.

Collins v. FMHA-USDA, 105 F.3d 1366, 1368 (11th Cir.).  cert. denied 521 U.S. 1127, 117

S. Ct. 2528, 138 L.Ed.2d 1028 (1997).

Likewise, section 2603 does not explicitly provide for private civil remedies.  Further,

section 2614 does not mention actions under section 2603.  This leads to the conclusion that

Congress did not intend to provide a private case of action for violations of section 2603.

As for the failure to make disclosures under sections 2605, 2607, and 2608, there is a

three year statute of limitations for actions under section 2605 and a one year statute of

limitations for actions under sections 2607 and 2608.  11 U.S.C. §2614.  The Loan was

closed on March 10, 2006.  (Complaint para. 28).  The complaint was filed December 20,

2010.  Accordingly, the claims for failure to make disclosures at the time of the closing of the

Loan are time barred.

Debtors also contend that on or about September 13, 2010, they sent Wells Fargo a

qualified written request under section 2605, requesting certain items of information

regarding the Loan, servicing of the Loan, and information regarding Wells Fargo's alleged

failure to properly consider Debtor's loan modification.  (Complaint para. 126).  Debtors

contend that Wells Fargo has failed to provide some of the information requested.

Section 2605(e) requires loan servicers to respond to "qualified written requests from

the borrower . . . <u>for information relating to the servicing of such loan</u>".  12 U.S.C.

§ 2605(e)(1)(A) (emphasis supplied).  The term "servicing" is defined in 24 CFR § 3500.2

as:

> . . . receiving any scheduled periodic payments from a borrower
> pursuant to the terms of any mortgage loan, including amounts for
> escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and
> making the payments to the owner of the loan or other third parties or
> of principal and interest and such other payments with respect to the
> amounts received from the borrower as may be required pursuant to
> the terms of the mortgage servicing loan documents or service
> contract. . . .

12 U.S.C § 2605(f) provides a private cause of action to Debtors for any violations of

§ 2605.  If Debtors can prove that Wells Fargo violated section 2605, Debtors are entitled to

recover damages under section 2605(f)(1).

Although Debtors did not attach copies of their September 13, 2010, request or Wells

Fargo's responses thereto, Debtors described the nature of their request in paragraph 126 of

their complaint.  Wells Fargo has admitted receiving the letter (Answer para. 139), but denies

that it failed to properly respond.  (Answer para. 141).  Thus, as for the requests for

information relating to the "servicing of the loan" as described by Debtors in paragraph

126(a) through (g) of their complaint, the facts are in dispute and, based on the pleadings,

Wells Fargo is not entitled to judgment as a matter of law and its motion is denied.

On the other hand, much of the information which Debtors sought relates to their

21

allegations that Wells Fargo failed to provide them with a permanent loan modification under the HAMP program.  (See, for instance, Complaint paras. 126 (h), 130 - 137 and 140). This information is outside the scope of the term "servicing" as defined in 24 CFR § 3500.2.  Cf. Williams v. Wells Fargo Bank, N.A., Inc., 2010 WL 1463521 at *3 (N.D.  Cal. April 13, 2010) (a request for documents relating to borrowers' options for loan modification, short sale, or bankruptcy was not a request for information relating to the servicing of the loan); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 901 (N. D. Ill. 2000) (a request for information relating to validity of loan documents was not a request for information relating to servicing of the loan).  Since Wells Fargo was not required to provide such information, a failure to respond to this type of request would not be a violation of 12 U.S.C. § 2605. Accordingly, to the extent that Debtors' RESPA claim relates to a request for information relating to the failed attempt to modify the Loan under HAMP, Wells Fargo is entitled to judgment on the pleadings and its motion is granted.

Debtors also assert claims under 12 U.S.C. § 2609, contending that Wells Fargo failed to properly perform escrow analysis with respect to the Loan.  However, there is no private right of action for violations of 12 U.S.C §2609(c)(2).  Hardy v. Regions Mortgage, Inc., 449 F.3d 1357 (11th Cir. 2006).  Accordingly, Wells Fargo is entitled to judgement on the pleadings on any claim by Debtors under section 2609.[8]

---

[8] In their brief, Debtors contend that the security deed securing the Loan incorporated RESPA and that Wells Fargo's failure to comply with section 2609 gives them an independent claim for breach of contract.  However, this would constitute a new claim which was not made in the complaint and to which Wells Fargo has not had an opportunity to respond.  Further, Debtors have not asked to amend their complaint pursuant to Bankruptcy Rule 7015.  Accordingly, the Court will not consider this claim.

Wells Fargo also challenges Debtors' request for damages under section

2605(f)(1)(B) for Wells Fargo's alleged "pattern or practice of noncompliance".  (Complaint

Count V paras. 148-149).  Section 2605(f)(1)(B) allows a court to award "any additional

damages, as the court may allow, in the case of a pattern or practice of noncompliance with

the requirements of this section, in an amount not to exceed $1,000."  As held by the court in

McLean v. GMAC Mortg. Corp., 595 F. Supp. 2nd 1360, 1365 (S.D. Fla. 2009), affd. 398

Fed. Appx. 467 (11th Cir. 2010):

> The courts have interpreted the term "pattern or practice' in
> accordance with the usually meaning of the words.  See In re Maxwell,
> 281 B.R. 101, 123 (Bankr. D. Mass. 2001) (citing Cortez v. Keystone
> Bank, Inc., No. 98-2457, 2000 WL 536666, *10 (E.D. Pa. May 2,
> 2000).  'The term suggests a standard or routine way of operating.'  In
> re Maxwell, 281 B.R. at 123; In re Tomasevic, 273 B.R. 682 (Bankr.
> M.D. Fla. 2002) (failure to respond to one qualified written request did
> not amount to a "pattern or practice"); Ploog v. HomeSide Lending,
> Inc., 209 F. Supp. 2nd 863, 869 (N.D. Ill. 2002) (failure to respond to
> qualified written requests on five occasions was sufficient to establish
> a pattern or practice").

According to Debtors' complaint, Wells Fargo failed to respond to only one valid qualified

written request.  (Complaint paras. 126-128).[9]   This is not sufficient to show a "pattern or

practice of noncompliance".  Accordingly, to the extent that Debtors seek damages under

section 2605(f)(1)(B), Wells Fargo's motion for judgement on the pleadings is granted.

Further, on the issue of actual damages, section 2605(f)(1)(A) allows an individual to

recover "any actual damages to the borrower as a result of the failure" to respond to a

---

[9] Debtors also allege that Wells Fargo did not respond to numerous requests for
information relating to the failed HAMP loan modification.  (Complaint para. 133).
However, as explained above, the request for this type of information is outside the scope of
section 2605 and is therefore not a valid qualified written request.

23

qualified written request. (emphasis supplied).

> In other words, the plaintiff must establish that the economic injury was proximately caused by the bank's violation of the Real Estate Settlement Procedures Act.  Thus, economic injury may include economic damages that flow from the bank's failure to respond to a qualified written request as required by the statute.

In re Tomasevic, 273 B.R. 682, 687 (Bankr. M.D. Fla. 2002).  See also Turner v. Beneficial

Corp., 242 F. 3d 1023, 1027-28 (11th Cir.) (en banc) cert. denied 534 U.S. 820, 122 S.Ct. 51,

151 L.Ed 2d 21 (2001) (requiring a casual link for TILA claims).

Debtors' complaint alleges that they have incurred actual damages including

foregoing:

> .  .  .  .  other remedies that might have been pursued to save their home, such as restructuring their debt under the federal bankruptcy laws with less of an arrearage, or pursuing other strategies to deal with their defaults, such as selling their homes (sic) with less of an arrearage as an impediment.  In addition to the lost time and opportunity cost of pursuing other means of dealing with their default, when a permanent modification was not offered at the close of the three-month TPP, Plaintiffs suffered damages in the form of fees, charges, accrued interest and other costs applied to their account.

> 105. Plaintiffs were also harmed by Wells Fargo's misreporting of delinquent trial payments to the credit bureaus .  As a result, Plaintiffs' credit scores were severely impacted.  Plaintiffs have suffered additional harm and expense in the form of having their names published in the local newspapers concerning foreclosure of their home when, in reality, they should have been extended offers for permanent modification of their mortgage Loan and several months into their modified permanent payment plans.  Plaintiff, James R. Salvador, Jr., is a local builder and his financial integrity is an integral component of his being able to maintain old business relationships and gain new construction clients who will trust him to manage their construction fund monies properly.  Plaintiffs' reputation has now been tarnished by the unwarranted foreclosure publication.

Complaint paras. 104-105.  Debtors also contend that they have incurred damages for:

24

> . . . . cost of photocopies and postage related to the sending of the
> QWR; time spent in obtaining compliance; transportation costs and
> inconvenience; expenditures to martial (sic) documentation to contest
> the subject foreclosure; time and expense lost and opportunity costs
> associated with having to make extra time to address these
> documentation issues; lost reputation in the community; damage to
> their credit rating as a result of the consequence of the adverse credit
> reporting; severe economic distress; additional interest, late fees, and
> foreclosure costs; and attorney fees and costs.

Complaint para. 147.

Debtors have the burden of proving that these damages were proximately caused by

Wells Fargo's failure to respond to a valid qualified written request (QWR). They would not

be entitled to any of the alleged damages to the extent that they flowed from the failed

attempt to obtain a permanent loan modification or from their actual default under the Loan.

Based on the pleadings, the Court is unable to determine what, if any, of these

damages arose as a result of Wells Fargo's alleged failure to respond to a valid qualified

written request. Accordingly, Wells Fargo is not entitled to judgement on the pleadings with

respect to the issue of damages under section 2605(b)(1)(A).

In summary, Wells Fargo's motion for judgment on the pleadings is granted with

respect to Debtors' Count V RESPA claim under section 2603, the claim under sections

2605, 2607 and 2608 for failure to make disclosures at the time the Loan was closed in

March, 2006, the claim under section 2605 for failure to respond to requests for information

relating to Debtors' failed attempt to modify the Loan under HAMP, the claim under section

2609 and the claim for "additional damages" under section 2605(f)(1)(B). The motion for

judgment on the pleadings is denied with respect to Debtors' claim under section 2605 for

damages arising from Wells Fargo's alleged failure to respond to a valid qualified written

request for information relating to the "servicing of the loan" as described by Debtors in paragraphs 126(a) through (g) of their complaint.


8.      Count VI - Georgia Uniform Deceptive Trade Practices Act ("UDTPA")

In Count VI, Debtors allege that Wells Fargo violated the Georgia Uniform Deceptive Trade Practices Act ("UDTPA")  O.C.G.A. §§ 10-1-370 et. seq.  Debtors allege the violation was a result of Wells Fargo's non-disclosures, inaccurate disclosures and conduct that collectively violated GAFLA, HAMP, and/or breach of the covenant of good faith and fair dealings.  (Complaint paras. 146-148.).  Debtors seek equitable injunctive relief, relief from the requirement of making tender, general and exemplary damages , and costs and attorney fees.

The Court has previously determined that Wells Fargo is entitled to judgment on the pleadings as to Debtors' claims under GAFLA, breach of contract, and breach of good faith and fair dealing.  Although Debtors mention HAMP throughout their complaint, no specific claim under HAMP has been made.  Indeed, such a claim would fail as there is no private cause of action under HAMP.  See e.g. Marks v. Bank of America, supra at *5.  Since Debtors' allegations of UDTPA violations were based upon the aforesaid alleged violations, Debtors' UDTPA claim must also fail.  Accordingly, Wells Fargo is entitled to judgment on the pleadings on Count VI.


9.      Count VII - Georgia Fair Business Practices Act of 1975 ("FBPA")

In Count VII, Debtors allege that Wells Fargo violated the Georgia Fair Business

26

Practices Act of 1975 ("FBPA")  O.C.G.A. §§ 10-1-390 et seq.  Debtors allege the violation was a result of non-disclosures and inaccurate disclosures in violation of GAFLA, HAMP, and breach of the covenant of good faith and fair dealing.  (Complaint para. 154).  Debtors seek equitable injunctive relief, relief from the requirement of making tender, general and exemplary damages, costs and attorney fees. Debtors also assert their FBLA claim as a defense to Wells Fargo's action to enforce Debtors' obligations.  O.C.G.A. § 10-1-401(b).

Because mortgage transactions are regulated by TILA, RESPA and the Georgia Residential Mortgage Act, the FBPA does not apply to residential mortgage transactions.[10] Figueroa v. JP Morgan Chase Bank, 2010 WL 4117032 (N.D. Ga., Oct. 7, 2010) (Story, J.); Zinn v. GMAC Mortgage, 2006 WL 418437 (N.D. Ga., Feb. 21, 2006) (Shoob, J);  Jackman v. Hasty, 2011 WL 854878 (N.D. Ga., Mar. 8, 2011) (Story, J.) (servicing of mortgages and foreclosure sales are exempt from FBPA and UDTPA).  Accordingly, Wells Fargo is entitled to judgment on the pleadings on Count VII.

## CONCLUSION

Wells Fargo's motion for judgment on the pleadings is granted with respect to Counts I, II, III, IV, VI and VII.  As explained in Part 7 above, as to Count V, the motion is granted in part and denied in part.  A separate order will be entered consistence with this decision.

## **END OF DOCUMENT **

---

[10] Debtors' reliance on Hardy v. Regions Mortgage, Inc., 449 F.3d 1357 (11th Cir. 2006) is  misplaced.  The issue in Hardy was an alleged violation of section 10 of RESPA for which no private cause of action exists.  Hardy does not deal with the claims asserted by Debtors in Count VII.